**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JUAN ROSA,

                Plaintiff,

      -v-                                            9:23-CV-573 (AJB/PJE)

OFFICER HOKE, SERGEANT
E. VELIE, and JOHN DOES 1-9,

                Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

JUAN ROSA
Plaintiff, Pro Se
17-A-3938
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. LETITIA JAMES                         CHI-HSIN E. ENGELHART, ESQ.
New York State Attorney General           ANTHONY HUNTLEY, ESQ.
Attorneys for Defendants                        KONSTANDINOS D. LERIS, ESQ.
The Capitol                                         Assistant Attorneys General
Albany, NY 12224

**Hon. Anthony Brindisi, U.S. District Judge:**

## ORDER ON REPORT & RECOMMENDATION

On May 10, 2023, *pro se* plaintiff Juan Rosa ("plaintiff"), an individual in the custody of the New York State Department of Corrections and Community Supervision, filed this 42 U.S.C. § 1983 action alleging that a number of corrections officers violated his civil rights while he was housed at Great Meadow Correctional Facility. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3. The matter

was initially assigned to U.S. District Judge David N. Hurd, who referred the case to the assigned magistrate judge for an initial review of plaintiff's pleading.

On June 5, 2023, U.S. Magistrate Judge Christian F. Hummel granted plaintiff's IFP Application and, after an initial review of the pleading, determined that plaintiff's 42 U.S.C. § 1983 claims alleging: (1) excessive force and/or failure-to-intervene in violation of the Eighth Amendment; and (2) an unlawful "strip search" in violation of the Fourth Amendment, required a response from Officer Hoke, Sergeant Velie, and Does 1–9.  Dkt. No. 5.  Thereafter, Hoke and Velie answered the complaint, Dkt. No. 12, and the parties completed a period of fact discovery.[1]

On May 20, 2024, Hoke and Velie moved under Rule 56 of the Federal Rules of Civil Procedure for summary judgment against plaintiff's § 1983 Fourth Amendment unlawful "strip search" claim.  Dkt. No. 29.  Although plaintiff received a sixty-day extension of time in which to respond, Dkt. No. 32, he failed to do so.  The motion was referred to U.S. Magistrate Judge Paul J. Evangelista for a Report & Recommendation ("R&R") and the matter was reassigned to this Court for all further proceedings.  Dkt. Nos. 33, 35.

On April 17, 2025, Judge Evangelista advised by R&R that defendants' motion should be denied because the parties offered conflicting stories that precluded him from awarding judgment in defendants' favor as a matter of law.  Dkt. No. 36.  Although Judge Evangelista acknowledged that plaintiff's failure to oppose the motion permitted him to deem defendant's statement of facts admitted, Judge Evangelista declined to do so.  Instead, Judge Evangelista decided that, because plaintiff had filed a verified complaint, he would consider the allegations in the pleading as an

---

[1] Judge Hummel cautioned plaintiff that unknown defendants cannot be served with legal process and directed the parties to take reasonable steps to identify these individuals during discovery.  Dkt. No. 5.  The Does have not been identified and discovery is closed.  Dkt. No. 24 (setting deadline of March 8, 2024).

affidavit in opposition to the motion, at least to the extent that those statements were based on plaintiff's personal knowledge or supported by other aspects of the available record. *Id*.

Based on this approach, Judge Evangelista determined that defendants' version of events tended to show that their conduct was lawful. Defendants acknowledged that a use-of-force incident occurred at Green Haven on February 5, 2023, when plaintiff "became aggressive" and refused to comply with orders from non-party Corrections Officer ("C.O.") Roy. R&R at 16.

C.O. Roy "forcibly" handcuffed plaintiff and notified Velie, the area sergeant. R&R at 16. During this forcible handcuffing, defendants contend that plaintiff made several attempts to reach for an unknown object in his waistband. *Id*. at 16–17. Because physical force had been used during the handcuffing, unidentified C.O.s escorted plaintiff to the clinic for an exam. *Id*.

At the clinic, unidentified C.O.s restrained plaintiff because he refused to comply with staff directions and continued reaching toward his waistband. R&R at 17. Defendants Velie and Hoke arrived on the scene at that point. *Id*. When Velie heard from the C.O.s about plaintiff's actions (*i.e.*, his refusal to comply with orders and his movements toward his waistband), Velie authorized a "probable cause strip frisk" to determine whether plaintiff had "any dangerous contraband on his person." *Id*.

Plaintiff continued to resist. R&R at 18. Plaintiff punched Hoke twice in the face and hit Velie once in the chest. *Id*. Plaintiff, at this point wearing only his underwear, was subdued and placed in "mechanical restraints." *Id*. After the Superintendent authorized the staff to "use force to complete the strip frisk," plaintiff was escorted to a cell in the Special Housing Unit ("SHU"), where multiple C.O.s forced plaintiff face-first onto a bed. *Id*. at 19.

Plaintiff continued resisting. R&R at 19. One of the unknown C.O.s cut off plaintiff's remaining clothing with a pair of safety scissors and completed the "strip frisk," which recovered

an "altered metal item" of contraband. *Id*. at 20. Plaintiff was given a "smock to wear until he was issued new clothing." *Id*.

Velie witnessed the "strip frisk" and observed the contraband. R&R at 20. Hoke used a body hold to help restrain plaintiff during the "strip frisk" and observed the contraband, too. *Id*. Defendants' submissions—including use-of-force reports, incident reports, and a photograph of the alleged contraband—support this version of the story. *Id*. at 30.

However, Judge Evangelista determined that plaintiff's verified complaint and deposition testimony tended to establish a meaningfully different version of events. Plaintiff alleged that on February 5, 2023, non-party C.O. Roy refused to issue plaintiff a pass to attend his disciplinary hearing. R&R at 13. Plaintiff requested the presence of Velie, and in response, non-party C.O.s Roy and Williams handcuffed plaintiff. *Id*. Velie arrived soon after and, without a reason to do so, Velie, Hoke, and the John Doe C.O.s escorted plaintiff to a hospital exam room. *Id*.

There, Hoke removed plaintiff's handcuffs, instructed him to place his hands against the wall, told him they were going to strip search him, and instructed him to remove his shirt. R&R at 13–14. But when plaintiff began to pull his shirt over his head, Velie, Hoke, and the Does "assaulted plaintiff, tore off his clothes, and stripped him down to his boxer shorts." *Id*. at 14.

After this assault, plaintiff was handcuffed and moved to a cell in the SHU, where "they placed [him] on his stomach and one of the officers came and cut [his] boxers off." R&R at 14. Plaintiff was left naked in the cell but someone gave him a hospital gown to wear a few minutes later. *Id*. Plaintiff denied reaching toward his waistband, having any contraband, or resisting the C.O.s. *Id*. at 15.

Ultimately, Judge Evangelista determined that the parties offered conflicting versions of the underlying facts that prompted the "strip frisk." Dkt. No. 36 at 27. Because resolution of the

conflicting stories required determinations about witness credibility, Judge Evangelista held that triable issues of fact existed about: (1) plaintiff's resistance; (2) whether plaintiff reached for his waistband; (3) the type of search performed; and/or (4) whether any contraband was recovered from plaintiff. *Id*. at 33. Accordingly, Judge Evangelista recommended that defendants' motion for partial summary judgment be denied. *Id*. at 34.

Defendants have lodged objections. Dkt. No. 37. There, defendants argue that the R&R mischaracterized the record and misapplied the law. In defendants' view, plaintiff testified that he was *not* strip-frisked at all, but that, even assuming otherwise, any search that did occur was entirely lawful or, at worst, shielded by qualified immunity.

Upon *de novo* review, defendants' objections will be overruled. First, defendants argue that Judge Evangelista was required to deem their unopposed statement of facts admitted for the purpose of summary judgment. Dkt. No. 37. at 4–5. But Judge Evangelista was not required to do that. Although a court *may* deem a movant's unopposed statement of material facts admitted for purposes of summary judgment, the Local Rules do not *require* it. N.D.N.Y.L.R. 56.1(b).

Second, defendants argue that Judge Evangelista was obligated to pick one side of the story and stick to it; *i.e.*, he was not entitled to reject part of plaintiff's version of events *and* part of defendants' version of the narrative. In defendants' view, the R&R's analysis either had to rely on plaintiff's story (in which nothing like a "strip frisk" ever occurred) or on defendants' narrative (in which any "strip frisk" that occurred was entirely lawful). Dkt. No. 37 at 5–7.

This argument is rejected. It appears to be based on the notion that defendants' "account of how the strip frisk took place . . . should have been deemed true because Plaintiff does not controvert it." Dkt. No. 37 at 6. But the Local Rules on summary judgment—which operate through a review of competing statements and counter-statements of material facts—do not

function as a straitjacket on a court's ability to consider the record and make its own judgment about what the facts at trial might show. To be sure, the back-and-forth generated by this party-driven briefing process spelled out in the Local Rules:

> will cut a voluminous discovery record down to a manageable size by forcing the parties to identify areas of agreement and drill down on their disputes. This, in turn, should leave the Court in a better position to apply the undisputed facts to the law or, more commonly to decide if the non-movant's version of events, viewed in their favor and considered in light of the rest of the record, are sufficient to warrant a trial.

*Krul v. DeJoy*, 705 F. Supp. 3d 5, 33 (N.D.N.Y. 2023) (Hurd, J.). But this is merely a prudential rubric. It does not preclude the court, in appropriate situations, from looking at the record below (at least what has been offered). *See, e.g.*, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that court "may in its discretion opt to conduct an assiduous review of the record"), *abrogated on other grounds by Gross v. FBI Fin. Servs., Inc.*, 557 U.S. 167 (2009).

Third, defendants contend that the R&R failed to parse their version of the story closely enough. In their view, it does not matter if non-party C.O.s might have lied to Velie or falsely told him that plaintiff had tried reaching toward his waistband because Velie would have been entitled to rely on these reports (false or not) to authorize the "strip frisk." Dkt. No. 37 at 7–9.

But this argument is begging the question. When viewed in the light most favorable to plaintiff, the non-movant, and mindful of his *pro se* status, no such reports (false or not) were made to Velie. Instead, the version of events most favorable to plaintiff tends to show that he was escorted *without reason* to the exam room, told that he would be strip searched, assaulted without warning, handcuffed again, moved to a cell in the SHU, and placed face-down on his stomach on a bed. There, an unlawful "strip frisk" occurred. Velie authorized and witnessed

this "strip frisk." Hoke participated in this "strip frisk" by holding plaintiff down.[2] This "strip frisk" did not recover the contraband item identified in defendants' submissions.

A jury might well reject some or all of that story. But that is a task for the fact-finder, not for the Court on summary judgment. *Gallo v. Prudential Res. Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (Cardamone, J.) ("[T]he trial court's task at the summary judgment stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.").

Fourth, defendants contend that Judge Evangelista failed to address defendants' qualified immunity arguments. Dkt. No. 37 at 9–10. But the genuine disputes over the material historical facts correctly identified in the R&R rendered an analysis of qualified immunity premature. *See, e.g.*, *Kerman v. City of N.Y.*, 374 F.3d 93, 109 (2d Cir. 2004) (explaining fact-finder must resolve disputed facts that bear on the qualified immunity issue).

Fifth, defendants argue that the R&R failed to comply with Local Rule 7.1(a)(3), which reduces the movant's burden where, as here, the non-movant has failed to oppose a facially valid motion for relief. Dkt. No. 37 at 10. Putting aside the question of what a "facially valid" motion actually looks like for purposes of this Local Rule, the fact that a non-movant's failure to oppose a motion "shall be deemed as consent to the granting . . . of the motion" does not restrict the trial court's ability to conduct its own review of the available record. *Holtz*, 258 F.3d at 73. In sum, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

---

[2] Defendants point out in their objections that plaintiff "appeared to be confused" at his deposition in this case when defendants' counsel asked him about being strip-searched. The Court has reviewed the transcript of the deposition, Dkt. No. 29-2, where plaintiff describes his best recollection of a series of events that occurred immediately during and after he was allegedly assaulted by "a lot of" C.O.s. The Court declines to conclude that plaintiff's "confusion" in his deposition testimony is sufficient to establish anything as a matter of law.

This leaves two other matters to discuss. First, as noted *supra*, plaintiff has also asserted his claims against nine John Does. At the outset of this case, Judge Hummel cautioned plaintiff that Doe defendants with unknown identities cannot be served. Although plaintiff was instructed to take reasonable steps to try to identify these defendants, it appears from a review of the docket that plaintiff has failed to ascertain the identities of any of the Doe defendants.

Discovery in this action is now closed. The Second Circuit has held that the use of "John Doe" as a placeholder for an unknown defendant is appropriate "until the plaintiff has had some opportunity for discovery to learn the identities of responsible officials." *Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998). "However, if the plaintiff has failed to identify and serve the real party in interest before the close of discovery, the placeholder defendant must be dismissed without prejudice." *Harris v. Tioga County*, 663 F. Supp. 3d 212, 233 (N.D.N.Y. 2023) (collecting cases). Accordingly, the Does must be dismissed without prejudice.

Second, as emphasized by defendants, plaintiff failed to respond to this motion for partial summary judgment. In fact, a review of the electronic docket report for this action indicates that plaintiff has not communicated with the Court since he sought an extension of time to respond to the motion on June 3, 2024 (which he never did). Dkt. No. 31. Although none of the mailings to plaintiff have been returned as undeliverable, an electronic records search indicates that plaintiff is no longer being housed at Green Haven Correctional Facility (his current mailing address on file with the Court). Instead, the New York State Department of Corrections' electronic search tool indicates that plaintiff is currently being housed at Cayuga Correctional Facility.

Plaintiff has not updated his mailing address with the Court even though the Local Rules require him to do so promptly. N.D.N.Y.L.R. 10.1(c). Plaintiff was warned at the outset of this action that "his failure to [update his mailing address] may result in the dismissal of this action."

Dkt. No. 5 at 10. And in fact, the docket report shows that plaintiff has updated his address on file with the Court on multiple occasions. Dkt. Nos. 20, 25. So it is clear from the record that plaintiff knows and understands what is required of him.

Under Rule 41(b), a court may dismiss an action "if the plaintiff fails to prosecute or to comply with these rules or a court order." FED. R. CIV. P. 41(b); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). An involuntary dismissal under Rule 41(b) is a "harsh remedy to be utilized only in extreme situations." *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). But it can be warranted if less drastic alternatives have proven ineffective. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.3d 37, 42 (2d Cir. 1982) (holding that Rule 41(b) authority is "vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts").

Involuntary dismissal is unwarranted at this time. However, the Court cannot permit this action to languish on its busy docket, either. Accordingly, plaintiff will be directed to: (1) advise the Court of his current mailing address; and (2) explain whether or not he intends to pursue his remaining claims in this civil action. Plaintiff is cautioned that his failure to timely respond to this or other court orders will result in the dismissal of this action for failure to prosecute.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 36) is ACCEPTED;

2. Defendants' motion for summary judgment (Dkt. No. 29) is DENIED; and

3. Plaintiff shall have THIRTY DAYS from the date of this Order in which to file a written submission that: (a) advises the Court of his current mailing address; and (b) explains whether he intends to pursue this action; and

4. Plaintiff is CAUTIONED that his failure to timely respond to this or other court orders will result in the dismissal of this action for failure to prosecute.

The Clerk of the Court is directed to terminate the pending motions, set a deadline accordingly, and mail copies of this Order to plaintiff's last known address <u>and</u> to the address available through the State's public electronic records system.[3]

**IT IS SO ORDERED.**

Dated: June 11, 2025
Utica, New York.

Anthony J. Brindisi
U.S. District Judge

---

[3] https://nysdoccslookup.doccs.ny.gov/